JOHN BALL, EXECUTOR OF THE WILL OF JEREMIAH PRENDIVILLE, DECEASED, APPELLANT, v. THE MERCANTILE TRUST COMPANY, A CORPORATION, AND CATHERINE M. PRENDIVILLE, RESPONDENTS.*

St. Louis Court of Appeals. Opinion filed July 19, 1927.

**1.—Statutes of Foreign State—Adoption—Construction.** In the construing of statutes of another State, adopted by this State, the construction of the statute in the foreign State before its adoption here is controlling after its adoption.

**2.—Joint Tenancies—Joint Bank Account—Survivorship.** Under the provisions of section 11779, Revised Statutes 1919, governing joint bank accounts, joint deposits made by deceased and his niece in the bank in the form in which made was sufficient, in the first instance, to establish a joint ownership in the fund with all the incidents attached to such ownership, including the attendant rights of survivorship therein.

**3.—Same—Same—Ownership—Evidence—Depositors or Representatives May Show Actual Agreement.** Depositors having a joint bank account, or their representatives, as between themselves, may be permitted to introduce evidence that the actual agreement, if any, as between the parties was that title to joint ownership was not intended to be established, nor in fact conferred.

**4.—Gifts—Joint Bank Account—Presumption.** Section 11779, Revised Statutes 1919, governing joint bank accounts, fixes the interests of the depositors as those of joint tenants, and absent competent testimony of a contrary intention it gives to the deposit, in the form named, the value of raising a presumption of an intent to make an immediate gift.

*Corpus Juris-Cyc. References: Banks and Banking, 7CJ, p. 640, n. 88, 89; Gifts, 28CJ, p. 669, n. 26; Joint Tenancy, 33CJ, p. 905, n. 69 New, 74 New; Statutes, 36Cyc, p. 1154, n. 81.

Appeal from the Circuit Court of the City of St. Louis.—Hon. John W. Calhoun, Judge.

AFFIRMED.

*Wilbur C. Schwartz* and *John P. Leahy* for appellant.

(1) An agency cannot be established by the declarations of the agent. There is no evidence tending to prove that the deceased ever signed any agreement establishing a joint deposit which contained a provision that either or the survivor should draw. McDermott v. Hannibal, etc., R. Co., 76 Mo. 516; Jones on Evidence, section 255, page 383. (2) The provisions of section 11779, R. S. 1919, regulating deposits by one person in the name of another and providing for a release and discharge of banks, was enacted purely for the protection of the bank in which such deposit was made and does not attempt to settle or adjust the rights of the depositors as between themselves. Clary v. Fitzgerald, 155 App. Div. 659, 140 N. Y. Sup. 536; McDonald v. Sargent, 201 N. Y. Sup. 129; Dennigan v. San Francisco Savings Union Bank, 127 Cal. 142; Hayes v. Claeser, 189 App. Div. 444. (3) The mere opening of a joint account, each having equal right to draw, does not in itself establish a gift. Dennigan v. San Francisco Savings Union Bank, 127 Cal. 142; McCullough v. Forest, 84 N. Y. Eq. 101; Hayes v. Claeser, 189 App. Div. 449. (4) Notwithstanding the provisions of the statute, Section 11779, Revised Statutes 1919, and although the deposit was joint with the right of survivorship attaching thereto, oral evidence is always com-

petent to indicate the intention of the donor in making the deposit, and such intention will be sustained by the court, although adverse to the claim of the survivor. In re Fonde Estate, 206 App. Div. 61; Clary v. Fitzgerald, 155 App. Div. 659. (5) It is a familiar doctrine that if a gift does not take effect as an executed or completed transfer to the donee of possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition and good only if made and proved as a will. In re Lindhorst Estate, 270 S. W. 150; Albrecht v. Slater, 233 S. W. 8; Welch v. Mahoney, Admr., 121 Maine, 49; Spencer v. Vance, 57 Mo. 427; In re Estate of Soulard, 141 Mo. 642; Thomas v. Thomas, 107 Mo. 459.

*Igoe, Carroll, Higgs & Keefe* for respondent.

(1) Under the statute, the respondent and her uncle held the deposit in joint tenancy, and the respondent, as survivor, is the sole owner of the fund. R. S. 1919, secs. 11779, 11840; Conqueror Trust Co. v. Craig (Mo. App.), 218 S. W. 972; Clary v. Fitzgerald, 155 App. Div. 659, 140 N. Y. S. 536; O'Connor v. Dunnigan, 158 App. Div. 334, 143 N. Y. S. 373, aff. in 107 N. E. 1082; Loker v. Edmans, — App. Div. —, 197 N. Y. S. 857; Erwin v. Felter, 283 Ill. 36, 119 N. E. 926; Illinois Trust & Savings Bank v. Van Vlack, 310 Ill. 185, 141 N. E. 546; Reder v. Reder, 312 Ill. 209, 143 N. E. 418; New Jersey Title Guaranty Co. v. Archibald, — N. J. —, 108 Atl. 434; In re Redfield's Estate, — Mich. —, 164 N. W. 372; Ludwig v. Brunner, 203 Mich. 556, 169 N. W. 890; In re Taylor's Estate, — Mich. —, 182 N. W. 101; Kennedy v. Kennedy, 169 Cal. 287, 146 Pac. 647; McDougal v. Boyd, 172 Cal. 753, 159 Pac. 168; In re Harris' Estate, 169 Cal. 725, 147 Pac. 767; Miller v. American Bank & Trust Co., — Colo., —, 206 Pac. 796. (2) Not only does the form of the deposit show a joint tenancy, but the evidence clearly shows that such was intended by deceased and respondent. Deceased not only signed the contract creating the joint tenancy, but, through his agent, directed the bank as to the character and form of the deposit. In re Taylor's Estate, —Mich. —, 182 N. W. 101; Kelley v. Beers, 194 N. Y. 49, 86 N. E. 980; Erwin v. Felter, 283 Ill. 36, 119 N. E. 926; Kennedy v. Kennedy, 169 Cal. 287, 146 Pac. 647; New Jersey Title Guaranty Co. v. Archibald, — N. J. —, 108 Atl. 434. The testimony of the agent was properly received. The agent's testimony was competent to show agency, though his mere declarations would not have been. Monument Plumbing & Supply Co. v. Dittmeier (Mo. App.), 223 S. W. 818; Bates v. Walter (Mo. App.), 199 S. W. 729; Russell v. Wyant, 214 Mo. App. 377, 253 S. W. 790; Christian v. Smith, 85 Mo. App. 117. (3) The fact that deceased wished to be able to use the money during

his lifetime, "if he needed any of it," is not inconsistent with the intention to create a joint tenancy, joint user being an incident of every joint tenancy. Commonwealth Trust Co. v. DuMontimer, 193 Mo. App. 290, 183 S. W. 1137; Kelley v. Beers, 194 N. Y. 49, 86 N. E. 980; Kennedy v. Kennedy, 169 Cal. 287, 146 Pac. 647; Chippendale v. North Adams Savings Bank, 222 Mass. 499, 111 N. E. 371. (4) The making of the deposit with provision for survivorship rights did not constitute an attempt at testamentary disposition. The. thing given was a present joint interest, which, even if considered from the standpoint of a gift, contains all the elements required. But the gift, being of a joint interest (joint user, joint possession and survivorship being incident thereto) is not comparable to ordinary gifts of personal property not held in joint tenancy. Commonwealth v. DuMontimer, 193 Mo. App. 290, 183 S. W. 1137; Negaunee Nat'l Bank v. LeBeau, — Mich. —, 161 N. W. 974; Chippendale v. North Adams Savings Bank, 222 Mass. 499, 111 N. E. 371; Kelley v. Beers, 194 N. Y. 49, 86 N. E. 980; Reder v. Reder, 312 Ill. 209, 143 N. E. 418; Erwin v. Felter, 283 Ill. 36, 119 N. E. 926. (5) The creation of a joint tenancy in a bank deposit is a matter of contract, and the nature of the deposit is determined by the contract, just as in joint tenancies of real estate the character of the title is determined by the instrument of conveyance. Chippendale v. North Adams Savings Bank, 222 Mass. 499, 111 N. E. 371; Parrish v. Merchants & Mechanics Savings Bank, — Va. —, 91 S. E. 135, Reder v. Reder, 312 Ill. 209, 143 N. E. 418. See, also, cases cited under point 1.

BECKER, J.—This was an action by John Ball, executor under the will of Jeremiah Prendiville, deceased, against the Mercantile Trust Company and Catherine M. Prendiville, niece of the said deceased, to recover a sum of money which was deposited to the joint account of the said Jeremiah Prendiville and the defendant, Catherine M. Prendiville, in the Mercantile Trust Company savings' department. From the judgment rendered in favor of the defendant, Catherine M. Prendiville, the plaintiff, executor, appeals.

Plaintiff's petition below alleges that on the. 16th day of August, 1921, whilst Jeremiah Prendiville was a patient in Barnes Hospital in the city of St. Louis, and in a greatly enfeebled condition of body and mind, the defendant, Catherine M. Prendiville, who was then acting in a fiduciary capacity for the said deceased, and managing his business. affairs, caused a savings account to be opened in the Mercantile Trust Company of St. Louis in the joint names of the said Jeremiah Prendiville and herself, under the terms of which moneys were to be deposited in the said trust company, which could be withdrawn or paid out by the said trust company upon the request or order of both or either of them; that thereafter the said defendant collected

moneys on promissory notes, bonds and other property of the said Jeremiah Prendiville, and from time to time deposited the amounts so collected in said savings account, and that at the death of the said Jeremiah Prendiville there was deposited to the credit of said account $794.41; that the defendant, Catherine M. Prendiville, merely represented the deceased as a confidential agent and in a fiduciary capacity in opening the said account and had or has no right, title, claim or interest to any of the said moneys so deposited, and that the same was the sole and exclusive property of the said Jeremiah Prendiville, and that the plaintiff, as the executor under the will of said Jeremiah Prendiville, deceased, was rightfully entitled to the possession thereof.

The petition alleges demand upon the trust company and its refusal to pay, and prays that the defendant, Catherine M. Prendiville, be held to have no interest, right or title in the account, and for judgment against the defendant for the amount of the deposits and accrued interest thereon.

The answer of the defendant, Catherine M. Prendiville, among other things, sets up that on the 16th day of August, 1921, she deposited in the Mercantile Trust Company the sum of $147, in the names of herself and Jeremiah Prendiville jointly in such form and manner that said deposit and any additions thereto should be paid to either of said parties and in case of the death of either to the survivor of them, and that the same was made in such form at the request of Jeremiah Prendiville, and by agreement between him and said defendant, and upon the agreement and understanding that the said deposit and any additions to the same should be held in joint tenancy; that on or before the date of the said first deposit she and the said Jeremiah Prendiville executed and entered into a contract in writing with the said trust company and with each other, whereby it was provided and agreed that the original deposit and any additions thereto should be held to the account and as the property of herself and said Jeremiah Prendiville as joint tenants, and that upon the death of either of said joint tenants the accumulated funds, so deposited, with accrued interest thereon, should go and belong to the survivor absolutely; that from time to time deposits were made by her to the said account to the credit of herself and the said Jeremiah Prendiville, as joint tenants, under the aforesaid agreement; that the amount of such deposits with accrued interest thereon was in excess of $850 and was held by the defendant, Mercantile Trust Company, in the names of ''Jeremiah Prendiville or Miss Catherine M. Prendiville'' as joint tenants and that upon the death of the said Jeremiah Prendiville, on November 26, 1921, all right, title and interest in and to the funds so deposited, which the said Jeremiah Prendiville may have had, terminated and

that she, as the survivor, became and was the sole, and absolute owner thereof. This answer concludes with a prayer to decree, adjudge and declare that the plaintiff has no right, title or interest in said fund and that the ownership of the fund be declared and decreed vested in her, and that the trust company be ordered to deliver said sum to her on demand.

The answer of the defendant, Mercantile Trust Company, admitted that it had $850.24 as a balance in an account held in the names of Jeremiah Prendiville and Catherine M. Prendiville, either or the survivor to draw. It admitted that demand had been made upon it for the payment of the fund, which it was unable to comply with as the ownership of the said funds had not been established.

Plaintiff adduced the ledger card made by the Mercantile Trust Company which showed the entire entries of the account in question, also the pass book which corresponded with the said ledger card. The account consisted of four deposits made between August 16, 1921 and October 21, 1921; and the pass book showed the account was in the name of "Catherine M. Prendiville or Jeremiah Prendiville,—ther, or survivor to draw." (There is evidently an omission before the letters "ther." It is conceded that the word probably meant is "either.")

The attorney for the trust company testified for the plaintiff that when an account is opened at the trust company, the parties are requested to execute signature cards for the purpose primarily of getting the signatures of the parties in order that any of their checks might be identified as to their signatures, and also to govern or indicate the wishes of the parties as to whose name the pass book is to be drawn, and the kind of an account to be opened; that the pass book is supposed to evidence what the parties desire when they execute the signature cards; that the pass book reflects the intentions of the parties in the execution of the signature cards; that the signature card is invariably executed by depositors when the account is opened, and is preserved with the account.

The plaintiff adduced E. A. Kamp who testified that he was in the real estate business, had known Jeremiah Prendiville, who was a man of considerable means, for a number of years prior to his death, and had attended to his real estate investments for him; that the defendant, Catherine M. Prendiville, was one of several nieces of the deceased; and that Jeremiah Prendiville, a year and a half prior to his death, had been in ill health and had given up all active business, and that the witness visited him in several hospitals; that after August, 1921, at which time Jeremiah Prendiville was confined in Barnes Hospital, he never thereafter went to the bank, safe deposit vaults or any where else, but transacted his real estate

and bank transactions through him. The witness often brought checks for rents collected to the deceased; that the deceased some-times-held such rent checks for a considerable time and therefore the witness suggested that such checks should be cashed; that the deceased thereupon told him that he wanted to turn the rent collections over to his niece, Catherine M. Prendiville, to use during the time he was living for the payment of his bills, and wanted her to have it after he was dead; "that he wanted her to have the money? A. Yes, sir. And I suggested that we go to the bank and open a joint account so that either one could draw, and if he lived he could draw the money and if he died she could draw the money."

"Q. That was before the account was opened? A. Yes, sir. We went later and opened the account."

"Q. Did he direct you to do that? A. Yes, sir."

"Q. And did he say he wanted her to have the money after his death that went into that account? A. *He said that he wanted her to have that money, but during the time that he was living he wanted the use of it; if he needed any of it, he wanted the use of what he would need.*"

The witness identified the signature of Jeremiah Prendiville to the signature card. In reply to questions by the court he said he was acting for Mr. Prendiville in the matter of opening the joint account, and that Mr. Prendiville had asked him to open the account in the joint names of himself and his niece.

The signature card which was introduced in evidence showed on the face of it that the account was opened in the names of Jeremiah Prendiville and Catherine M. Prendiville; that the deposits were made with assent given to the regulations of the Mercantile Trust Company and all changes thereof governing savings deposits, and set forth that the undersigned (the deceased and his niece Catherine) opened a joint account and agreed that all the moneys deposited in same by either or both should be placed to their credit jointly and might be withdrawn from or paid by the said company on the request or order of both or either of them, and across the face of the printed card was written, in green type, "either or the survivor to draw." The card bore the date of August 16, 1921, and bore the signatures of Jeremiah Prendiville and Catherine M. Prendiville.

The defendant, Catherine M. Prendiville, was sworn as a witness on her own behalf but the court sustained an objection that she was an incompetent witness.

After taking the case under advisement the court found that the defendant, Catherine M. Prendiville, was entitled to the moneys deposited in the joint account, and ordered the defendant, Mercantile Trust Company, to pay same to her on demand.

Section 11779, Revised Statutes of Missouri, 1919, among other things provides:

"When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof."

Plaintiff here urges that the said quoted portion of section 11779 was enacted purely for the protection of the bank in which such deposit is made and does not attempt to settle or adjudge the rights of the depositors as between themselves.

The portion of the said section of the statute quoted above was, prior to its enactment in this State, in force in the State of New York, in which State it was enacted in 1907, as amendment to section 114 of the Banking Laws of 1892 (Laws of 1906, Chap. 689) and appears as section 249, paragraph 3, page 684 of the Consolidated Laws of New York, and the same section *in haec verba* was incorporated into the statutes of Missouri during the legislative session of 1915, and now appears as section 11779, Revised Statutes of Missouri, 1919. Under the accepted rule in this State, in the construing of statutes of another State, adopted by this State, the construction of the statute in the foreign State before its adoption here is controlling after its adoption. [State v. Conway, 241 Mo. 271, 145 S. W. 441; Yost v. Ry. Co., 245 Mo. 219, 149 S. W. 557; Joplin Supply Co. v. Smith, 182 Mo. App. 212, 167 S. W. 649; State ex rel. Crowe v. Carruthers, 204 Mo. App. 209, 222 S. W. 1043.]

The construction placed upon the law in question by the courts in the State of New York is clearly set out in Clary v. Fitzgerald, 155 App. Div. 659, 140 N. Y. Supp. 536, where, in the course of the opinion it is said that, "the deposit was one within the classification of the statute, made by the intestate in the names of herself, 'and another person and in form to be paid to either or to the survivor of them.' It would seem, therefore, if any effect is to be given to the direct and explicit language of the statute, this deposit, as the statute provides, thereupon, presumptively at least, became the property of the designated depositors, 'as joint tenants;' i. e.,

as joint owners. But it is urged that this enactment was not intended for the purpose of determining the property rights and relations of the depositors in a fund so deposited, but was for the exclusive purpose of protecting the bank with which the deposit was made in making payment to the depositors from the fund. . . . But it should be observed that this provision was simply an added subdivision to the provisions, which had for some years earlier been the corresponding section of the banking law. One of these earlier provisions in terms established the property rights of an infant in a deposit made by or for him in his name.'' (Such provision is also found in section 11779, Revised Statutes of Missouri, 1919). ''But the part of the provision which in terms decrees that a deposit made in the form described therein shall thereupon become the property of the depositors as joint tenants, was merely surplusage, if the purpose of the statute is to be limited only to prescribing to whom and under what conditions the bank might safely pay such deposits.''

''Of course, it should be assumed that every provision of a statute was intended to serve some useful purpose and effect should be given, if possible, to every part of it. [Allen v. Stevens, 161 N. Y. 145, 55 N. E. 568; Peoples ex rel. Killeen v. Angle, 109 N. Y. 564, 17 N. E. 413.] We think, therefore, that the necessary effect of this provision of the statute is that the single fact, unexplained by other competent evidence, that a deposit in a savings bank in the form in which this deposit was made, fixes the respective rights of the depositors named as joint owners of the property with all the incidents attaching to such ownership. It may be true that the depositors or their representatives, as between themselves, may be permitted to show by other competent evidence that title as joint owners was not intended to be established nor in fact conferred. Inasmuch as the actual agreement as to the title would be one between the named depositors themselves, the bank would not be a party to that agreement as to the ownership of the fund; and such an agreement might doubtless be proved even by parol evidence in a controversy between the parties to fix their relative rights to the fund. [Folinsbee v. Sawyer, 157 N. Y. 196, 199, 51 N. E. 994, and cases there cited.]''

This construction was affirmed and upheld in the later New York case, In re Fonde Estate, 206 App. Div. 61, 200 N. Y. Supp. 81.

We note that the State of Michigan, in 1909, adopted an equivalent statutory provision. [See sec. 3, art. 248, Public Acts of Michigan, 1909.] And in the case of, In re Rehfeld's Estate, 198 Mich. 249, 164 N. W. 292, wherein the court had the constitutionality and the construction of the statute before it, in the course of the opinion it was said:

"We are of the opinion that in enacting the legislation in question it was the legislative intent not only to protect banks in the paying of deposits made in the manner indicated by the statute; but in the first instance and in the absence of competent evidence to the contrary, to actually fix the ownership of the fund in persons named as joint tenants with the attendant rights of survivorship therein."

The reasoning and the conclusion arrived at in the cases above quoted appeals to us as sound and it is our view, and we so hold, that under the provisions of our statute, quoted supra, .the deposit in the bank in the form in which it was made was sufficient in the first instance to establish in this action a joint ownership in the fund with all the incidents attached to such ownership, including the attendant rights of survivorship therein. Also that the depositors or their representatives, as between themselves, may be permitted to introduce other competent evidence that the actual agreement, if any, as between the parties was that title to joint ownership was not intended to be established nor in fact conferred.

It is next urged that the mere opening of a joint account, each having equal right to draw, does not in itself establish a gift.

The answer to this contention is that the deposit here in question was made in the form to be paid to Jeremiah Prendiville or Catherine M. Prendiville, either or survivor to draw. The statute cited, supra, fixes the interests of the depositors as those of joint tenants and absent competent testimony of a contrary intention, it gives to the deposit, in the form named, the value of raising a presumption of an intent to make an immediate gift.

As we read the record before us, Jeremiah Prendiville wanted an account to be opened in the names of himself and his niece in such manner that upon his death his niece would have sole ownership of the fund, and yet he himself be able to draw from the account during his lifetime, "if he needed any of it." In conformity with his desire and at his direction, an account was opened and the contract of deposit signed by him and his niece, authorizing both or either of them, or the survivor, to draw.

The case of Commonwealth Tr. Co. v. Du Montimer et al., 193 Mo. App. 290, 183 S. W. 1137, reviewed an action of interpleader where each of the defendants asserted claim to the fund created by a savings bank depositor, having requested the bank to make his account a joint account in favor of himself and another. A signature card was thereupon sent to such other, who duly signed and returned it to the bank and the account was thereupon made subject to withdrawal by either or the survivor, and it was held that there was a complete gift of a joint interest in the account entitling the donee to the fund should he survive the donor, although

the donor had at all times retained the pass book, which under the rules of the bank was required to be presented whenever any money was to be withdrawn. . . . ''Without undertaking to compile the multitude of authorities on the subject or to reconcile them, our conclusion is that it was a complete donation by which the fund became a joint fund, passing to the survivor on the death of one of the parties to it, and that the purpose of the donor was not defeated by his retention of the pass book.''

In Negaunee Nat'l Bank v. LeBeau, 161 N. W. (Mich.) 974, where a father had made a deposit to himself and his daughter jointly, providing that each might withdraw on his or her individual order during their joint lives, and that any balance, upon the death of either, should belong to the survivor, it was held that as the daughter was placed in full control of the deposit and might withdraw it at any time, there was an immediate gift *inter vivos* and that her rights could not be defeated after the death of the father on the ground that it was a testamentary disposition. [See, also, Kelly v. Beers et al., 194 N. Y. Rep. 49.]

In light of all the facts and circumstances surrounding the creation of the fund in question, we have come to the conclusion that the deposit in the bank in the form in which it was made, and under the evidence adduced in the case, must be held to have created a joint ownership of the fund with the attendant right of survivorship therein, and that the trial court properly decreed the defendant, Catherine M. Prendiville entitled to the fund. The judgment should be affirmed. It is so ordered. *Daues, P. J.*, and *Nipper, J.*, concur.