**In the Matter of the Estate of Ida KROEGER, Deceased.**

**Arthur G. HEYNE, Executor of the Estate of Ida Kroeger, Deceased, Plaintiff-Appellant,**

**v.**

**Elizabeth O. STENZHORN, Defendant-Respondent.**

**No. 34369.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Oct. 6, 1972.

Motion for Rehearing or to Transfer Denied
Jan. 12, 1973.

Application *to* Transfer Denied
March 12, 1973.

Davis & Davis, Abraham Davis, Clayton, for plaintiff-appellant.

Koenig, Dietz, Herrmann & Abels, F. Daley Abels, St. Louis, for defendant-respondent.

DOWD, Presiding Judge.

The issue on appeal is whether the funds contained in two savings accounts are part of the assets of the deceased's estate or whether they belong to the respondent herein, Elizabeth Stenzhorn, whose name appears on both accounts as joint tenant with the deceased. The Probate Court ruled in favor of the estate. By agreement of the parties, the cause in the Circuit Court was decided on the transcript of the evidence adduced in the Probate Court. The Circuit Court reversed.

The facts out of which this dispute arose are as follows. The deceased, Ida Kroeger, was a widow. Her husband, William Kroeger, died on September 1, 1966. Prior to his death, the Kroegers had maintained joint bank accounts. Sometime after Mr. Kroeger's death, Mrs. Kroeger opened new accounts in her own name with the funds from these joint accounts, which she had collected as surviving joint tenant.

Up until the date of her death, on October 25, 1968, when she was 84 years old, Mrs. Kroeger remained strong-willed and mentally alert. In fact, Mr. Arthur Heyne, her attorney and executor of her estate, described the decedent's mind as being "clear as a bell." However, she suffered from the usual infirmities of old age, including severe arthritis. Because of this, she was unable to get about, and needed

help in maintaining herself. Her personal needs were taken care of by the respondent, Elizabeth Stenzhorn, a friend for many years. Her banking and financial needs were taken care of by Mr. Heyne.

Sometime shortly after the end of 1966, Mr. Heyne found that these tasks were becoming too time-consuming. He thereupon suggested to Mrs. Kroeger that she should have someone put on her accounts who would take over his duties of writing out checks and maintaining proper balances among the savings and checking accounts. Mrs. Kroeger did not immediately follow this suggestion. However, she did ask Mrs. Stenzhorn to write out the checks, as Mr. Heyne had been doing. Mrs. Kroeger continued to sign them. Mr. Heyne then ceased his involvement with Mrs. Kroeger's financial matters. He did not learn of the following sequence of events until after Mrs. Kroeger's death.

On February 21, 1967, a joint checking account was opened in the name of Ida Kroeger and Elizabeth O. Stenzhorn. The joint checking account agreement payable to either or the survivor was signed by both women. On May 22, 1967, Mrs. Kroeger wrote a letter stating that "everything that has Elizabeth O. Stenzhorn's name on it belong to her." On July 26, 1967, a joint savings account was opened at Hampton Bank in the names of Ida Kroeger and Elizabeth O. Stenzhorn. The card bearing their two signatures was entitled "Joint Account, Either or Survivor," and a joint tenancy agreement was printed on the card. A similar joint savings account was opened at the Southside National Bank on August 22, 1967.

We note with some interest that the estate makes no claim to the funds in the joint checking account. At the trial below, counsel for appellant admitted that under the terms of this account, Mrs. Stenzhorn is entitled to all the money therein. We see no discernible difference between the terms set out on the signature card for the joint checking account and the terms set out on the signature cards for the joint savings accounts.

However, the executor's only contention herein is that the two savings accounts do not constitute valid contracts and are not, therefore, protected by the parol evidence rule. He alleges that Mrs. Kroeger made a "mistake" in choosing the "joint" form of banking accounts; that she merely wantted assistance in handling her banking transactions; and that she did not "intend" to create a true joint tenancy with right of survivorship. The basis for these contentions is the executor's own advice to Mrs. Kroeger that she should have someone's name on her accounts, for convenience sake, in the event she would ever be unable to write.

That the accounts opened by Mrs. Kroeger and Mrs. Stenzhorn are in the form prescribed by our statutes for the creation of a joint tenancy is not disputed by the executor. See Section 362.470 V.A. M.S. Appellant relies on Commerce Trust Company v. Watts, 360 Mo. 971, 231 S.W. 2d 817 which is the leading "joint tenancy" case in this state. There, our Supreme Court held that a joint signature card constitutes a written contract between the parties, the terms of which cannot be varied by oral testimony. The joint deposit agreement evidences the intention of the decedent to make a gift in praesenti and the contract itself supplies all the formalities necessary to render the gift effective. Referring to this contract, the court stated:

"Their entire agreement is set out therein. Their intention is clearly evident therefrom. That no one may be heard to say that an actual agreement made by the parties is not reflected in their unambiguous written contract, the courts, by the application of the parol evidence rule, have uniformly held that, in the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous contract may not be varied, and a new and different contract substituted by parol evidence * * *. The writing it-

self becomes and is the single and final memorial of the understanding and intention of the parties." (l. c. 820).

We are convinced that the case at bar is controlled by the *Commerce Trust* case.

Appellant's argument is that the fact situation herein falls within one of the exceptions to the general rule laid down in *Commerce Trust*. That is, no valid contract ever came into existence, due to a unilateral mistake on the part of Mrs. Kroeger.

■ It is the general rule that joint accounts which are opened according to the provisions of the statute are presumptively what they appear to be. However, this presumption is rebuttable and it may be shown that this was not the intention of one or more depositors. Weber v. Jones, 240 Mo.App. 914, 222 S.W.2d 957; Keller v. Collison, Mo.App., 395 S.W.2d 729. What may be rebutted is not the terms of the written contract, but its valid existence as such.

■ "Mistake" is the only ground alleged by appellant herein to rebut the presumption of a valid joint tenancy agreement. The evidence does not support this contention. There is no question that deceased was mentally competent and strong-willed and had a mind "as clear as a bell." She and her husband had had joint banking accounts, and she had collected these funds as survivor, upon his death. She, therefore, had some experience in these matters. Moreover, Mrs. Kroeger signed the joint account cards. The terms of the joint tenancy agreement are clearly set out on the cards, and there has been no suggestion that her reading ability was deficient.

There was also evidence that Mrs. Kroeger could sign her name as late as April of 1968. Yet, she allowed Mrs. Stenzhorn to sign most of the withdrawal and deposit slips, as well as the checks. She at no time acted proprietorily with regard to these accounts, nor did she ever indicate an intention to restrict Mrs. Stenzhorn's use of them or her rights under the terms of the agreement. Although the executor testified that he urged her to put someone's name on her accounts, a period of about six months elapsed between this advice and the opening of the two savings accounts. The time lapse, together with the letter of May 22, 1967, suggests that Mrs. Kroeger arrived at her own conclusions and was not trying to "mistakenly" follow her attorney's advice. The letter, moreover, was never retracted.

Under these facts, it is difficult to believe that a mistake was made. Rather, the evidence strongly points to the conclusion that Mrs. Kroeger chose this form of bank account with full knowledge of the consequences, and that she intended her friend Mrs. Stenzhorn to have the funds. The only "intent" established by Mr. Heyne's testimony was his own. In light of all Mrs. Kroeger's actions considered above, we cannot impute Mr. Heyne's intent to her. The evidence simply does not support such a finding.[1]

Having determined that there was in fact an intention to create a joint tenancy with right of survivorship, we are governed by the rule set out in Commerce Trust Company v. Watts. In other words, having removed the element of mistake from consideration, we may only consider the actual terms of the written contract in arriving at the intention of the parties. Pa-

---

1. See Melton v. Ensley, Mo.App., 421 S.W. 2d 44. Ison v. Ison, Mo., 410 S.W.2d 65, and Keller v. Collison, supra, cited by appellant, while reaching different results, are not in conflict with either Commerce Trust Co. v. Watts, supra, nor this decision. *Ison* contained no joint tenancy agreement such as we have here. *Keller* was decided on the basis of undue influence, not alleged herein. See also In Re Estate of Barcikowski, Mo., 480 S.W.2d 877, where there was a finding of confidental relationship between decedent and the joint tenant. This point is also not alleged herein.

rol evidence may not be considered which tends to vary this agreement or substitute a new and different agreement. Commerce Trust Company v. Watts, supra.

Appellant's only other contention is that the Circuit Court failed to give deference to the opportunity of the Probate Court to judge the credibility of the witnesses. That part of the record with which we are primarily concerned is the exhibits showing the joint tenancy agreements signed by Mrs. Kroeger and Mrs. Stenzhorn. The interpretation of these legal documents is a question of law which does not involve the credibility of the witnesses. But accepting the oral testimony as true we find that such testimony failed totally to establish that the decedent mistakenly created a joint tenancy.

The judgment is affirmed.

SMITH and SIMEONE, JJ., concur.