In the Matter of the ESTATE of
Lora E. LOWE, Deceased.

Ruth S. LOWE, Administratrix of the Estate of Lora E. Lowe, Deceased, Respondent,

v.

Harold SURBY and Betty D. Surby, Appellants.

No. 9635.

Missouri Court of Appeals, Springfield District.

Feb. 6, 1975.

---

**374**

Edmund C. Forehand, Springfield, for appellants.

No appearance for respondent.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

FLANIGAN, Judge.

This is a discovery of assets proceeding [1] originally instituted in the probate court of Christian County, Missouri, on the affidavit of Ruth S. Lowe, Administratrix of the Estate of Lora E. Lowe, Deceased. Ruth S. Lowe is also the widow of the decedent. The purpose of the proceeding was to reach certain assets which were allegedly wrongfully withheld by Harold Surby and Betty D. Surby, husband and wife. The probate court entered judgment in favor of the administratrix and the Surbys appealed therefrom to the circuit court. This opinion will refer to the decedent as Lora, the widow and administratrix as Ruth, and Betty Surby as Betty.

The circuit court (Hon. William H. Pinnell, sitting as special judge, without a jury) found that there were three assets in controversy, two of which he awarded to the administratrix and the third to Betty. The latter asset consisted of $814.28, the proceeds of an insurance policy in which the decedent was the insured and Betty was the beneficiary, the policy having been issued prior to the marriage of Ruth and Lora. The two assets awarded to the administratrix consisted of $3,557.24, representing the deposit in controversy on this appeal, and $2,600 being the amount which Betty received from selling certain cattle of the decedent after his death. The judgment of the circuit court against Betty and her husband was in the amount of $6,157.-24, together with interest.

From the judgment of the circuit court, Betty and her husband brought this appeal. They make no complaint concerning the $2,600 item and this appeal involves only the propriety of that portion of the circuit court's judgment pertaining to the bank deposit of $3,557.24.

■ On this appeal it is the duty of this court to review the case upon both the law and the evidence as in suits of an equitable nature, giving due regard to the opportuni-

1. See §§ 473.340 to 473.353, inclusive, RSMo 1969, V.A.M.S.

ty of the trial court to have judged the credibility of witnesses. Rule 73 V.A.M.R.

Judge Pinnell made findings of fact and conclusions of law, with which this court agrees. They include:

Lora and Ruth were married on January 10, 1966. For several years prior to his death Lora suffered from valvular heart disease and congestive heart failure. During 1968 his condition became worse and in June of that year he retired from his regular employment at a cheese company. Thereafter Lora had difficulty "getting about the house and had to sleep sitting up in a chair in order to breathe."

Lora retired from his job the day after Lora and Ruth conferred with a doctor in Springfield, Missouri, regarding Lora's physical condition, which was bad.

On September 12, 1968, Lora withdrew the entire balance ($3,557.24) from a savings account held in his name in the Ozark Bank, Ozark, Missouri, and deposited that amount in a joint checking account in the same bank. The latter account was in the joint names of Lora and Betty in such form as to comply with § 362.470 V.A.M.S. pertaining to joint bank accounts. Lora did not inform Ruth of this deposit and she did not learn of it until after Lora's death. This amount was subsequently withdrawn by Betty and used by her and her husband for their own purposes.

On October 14, 1968, Lora was admitted to a hospital in Springfield, Missouri, where he remained until his death on December 9, 1968. The inventory in Lora's estate, which made no mention of the assets sought in the discovery proceeding, listed assets having a total value of $93.00, consisting of household goods and wearing apparel. The probate court allowed against the estate claims totaling $2,039.60, which remain unpaid.

There was a lack of consideration for the transfer by Lora of the $3,557.24 from his savings account to the joint account. Lora retained some degree of control over the $3,557.24, as shown by the card [2] which Lora and Betty subscribed on the creation of the joint account.

Judge Pinnell further found that the $3,557.24 deposit was made by Lora "at the time that (Lora) was in contemplation of or in anticipation of death . . . and with full knowledge . . . of his condition and realization of the nearness of death." Judge Pinnell further found "as a matter of law, that the value of the transferred property was so great in relation to the amount remaining in the estate subject to the claims of the surviving spouse and creditors, that fraudulent intent of (Lora) did, in fact, exist."

This court confines its review [3] to the sole contention made in appellants' brief. That contention, as this court understands it, is that a deposit made in a bank account, which at the time of the deposit was held in the joint names of a decedent and another person in such form as to comply with § 362.470 V.A.M.S. is, *solely by reason of its being a portion of such an account,* immune from any attempt to recover it under the provisions of § 474.150

2. The card reads in part: "JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR. We agree and declare that all funds now, or hereafter, deposited in this account, are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor. It is especially agreed that withdrawals of

funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives."

3. "The questions for decision on appeal are those stated in the points relied on, and a question not there presented will be considered abandoned on appeal and no longer an issue in the case." Pruellage v. DeSeaton Corporation, 380 S.W.2d 403, 405 [3, 4] (Mo.1964). This language is quoted, with approval, in St. Louis Teachers Ass'n v. Board of Education, 456 S.W.2d 16, 18 (Mo.1970).

V.A.M.S.[4] or § 473.267 V.A.M.S.[5] This contention is rejected.

In support of their contention, appellants cite, as their only authority, In Re Estate of LaGarce, 487 S.W.2d 493 (Mo. banc 1972).

*LaGarce*, indeed, is a landmark case in the law pertaining to joint bank accounts, but it does not support the contention of appellants. In *LaGarce*, the Supreme Court, in referring to § 362.470 pertaining to joint bank accounts, said: "The statute is clear and needs no construction. It is our view that if the statute is complied with, *in the absence of fraud*, undue influence, mental incapacity or mistake, the survivor will become the owner of the account." (Emphasis added). In Re Estate of La-Garce, supra, 487 S.W.2d 493 at p. 501.[6]

*LaGarce* itself was a discovery of assets proceeding filed by Bertha LaGarce, executrix of the estate of August LaGarce, deceased. Bertha was the widow of August. The trial court had entered judgment on the pleadings in favor of the plaintiff and against the defendants who, with August, were holders of the joint bank account in controversy. Although this judgment was reversed, the Supreme Court did not direct the trial court to enter judgment for the defendants. At p. 501 the court said: "The plaintiff has not yet had an opportunity to offer evidence, if she has any, on the issue *as to whether there was any fraud*, undue influence, etc., relating to this transaction, which evidence we have stated would be appropriate." (Emphasis added). In the case at bar the trial court found such fraud on the part of Lora in making the $3,557.24 deposit in the joint bank account and appellants have made no attack upon the propriety of that finding.

Shortly after appellants' brief was filed in this court, the Missouri Court of Appeals, Kansas City District, handed down its opinion in Nelson v. Nelson, 512 S.W. 2d 455 (1974), a case which almost parallels the one at bar.

In *Nelson* the court held that funds deposited in a joint bank account, established in the joint names of Cliff and his sister, were transferred in fraud of the marital rights of Cliff's wife. The action was brought after Cliff's death to reach the funds deposited. The court held that the case was controlled by § 474.150 RSMo V.A.M.S. and that the phrase "in fraud of the marital rights" contained in the statute, "was intended to adopt the meaning of that term as it existed at common law." Nelson, supra, 512 S.W.2d at 459. The common law of Missouri "has long been that a spouse may not give away his property without consideration with the intent and purpose of defeating the marital rights of the other spouse." *Nelson*, supra, 512 S. W.2d 455 at 459.

In *Nelson* the court listed some of the elements which have been recognized

---

4. § 474.150, in pertinent part, reads: "1. Any gift made by a person, whether dying testate or intestate, in fraud of the marital rights of his surviving spouse to share in his estate, shall, at the election of the surviving spouse, be treated as a testamentary disposition and may be recovered from the donee and persons taking from him without adequate consideration and applied to the payment of the spouse's share, as in case of his election to take against the will."

5. § 473.267 reads: "The real and personal property liable for the payment of claims includes all property transferred by the decedent with intent to defraud his creditors or any of them, or transferred by any other means

which is in law void as against his creditors or any of them, and the executor or administrator may recover the property, so far as necessary for the payment of claims, and take such steps as are necessary to recover the same. Property recovered by the executor or administrator constitutes general assets for the payment of all creditors; but no property so transferred shall be taken from anyone who purchased it for a valuable consideration, in good faith and without actual or constructive knowledge of the fraud."

6. The quoted language is reiterated in Dietz v. Humphreys, 507 S.W.2d 389, 391 (Mo. 1974).

by the courts as indicative of an intent to defraud the spouse. They include:

1. Lack of consideration for the transfer.

2. Retention of control by the transferor-spouse over the assets in question.

3. A disproportion between the amount transferred and the value of the transferor-spouse's total estate. On this point the court stated that the date of the transfer, rather than the date of death, is the correct date "upon which to make an analysis of assets in order to see whether the provision for the wife was disproportionately small."

4. Secrecy of the transfer—an "effective campaign of concealment" or at least "a lack of candor in violation of the marital duty."

The court also pointed out that an additional factor was whether the transfer was made in contemplation of imminent death, but made it clear that such factor, although one properly for consideration, is not indispensable to a finding that the transfer was made to defraud the wife.

The four elements enumerated in *Nelson* and the additional factor that the transfer was made in contemplation of imminent death are all present here.

*Nelson* held that deposits in a joint account, under the facts there existing, were recoverable under § 474.150(1). The La-Garce case is mentioned in the Nelson case, 512 S.W.2d at p. 459, but constituted no impediment to the ruling in Nelson.

§ 474.150(1) uses the word "gift" and it might be argued that since Lora retained

some control over the $3,557.24 deposit, there was no gift. This argument is unsound. The word "gift" has been used in several cases dealing with joint bank accounts.[7]

And note the following language in *LaGarce*:

"It is our view that the statute creates what might be described as a statutory joint tenancy which should be given effect without consideration of the strict common-law requirements mentioned in the cases. In the case before us we are particularly interested in the rights of the surviving depositor. Upon the death of the depositor who furnished the money, we cannot see any reason why the surviving joint tenant should not be held to be the owner of the deposit even though the *donor* may have intended to retain the beneficial interest in the account during his lifetime." (Emphasis added). In Re Estate of LaGarce, 487 S.W.2d 493, 500–501[2–4].

§ 473.267, quoted in footnote 5, uses the terminology "transfer" rather than gift, but the former includes the latter. "A gift is commonly defined as a voluntary transfer of property by one to another, without any consideration or compensation therefor." 38 C.J.S. Gifts § 1, p. 779; Harrelson v. Harrelson, 304 Mo. 250, 263 S.W. 107, 108.

If gifts or transfers otherwise recoverable under § 474.150(1) V.A.M.S. or § 473.-267 V.A.M.S., respectively, became nonrecoverable by the simple expedient of placing them in a joint bank account, the salutary purposes of both of these statutes would be thwarted. Fraud is not entitled

---

7. "All of the money which went into the joint checking account and the joint savings and loan accounts was the sole property of Mr. Patterson. We conclude that such interest in the accounts, including that of the right of survivorship, which Mrs. Golding received by reason of the written deposit agreements was by way of a gift." In re Patterson's Estate, 348 S.W.2d 6, 10 (Mo.1961). "The creation of the joint account was the present gift ' "of a partial interest in the form of a right to withdraw and the right of survivorship" '. Melton v. Ensley, Mo.App., 421 S.W.2d 44, 55 [21]." In re Estate of Hitchcock, Mo.App., 483 S.W.2d 617, 622. See also In Re Kaimann's Estate, 360 Mo. 544, 229 S.W.2d 527, 529; Commerce Trust Company v. Watts, 360 Mo. 971, 231 S.W.2d 817, 820; In re Estate of Kroeger, 490 S.W.2d 407, 409 (Mo. App.1972).

to such a sanctuary. This court concludes that money which is recoverable under § 474.150(1) V.A.M.S. or § 473.267 V.A.M.S. does not lose its recoverability although it is deposited in a joint bank account established in compliance with § 362.470 V.A.M.S. In Re Estate of LaGarce, supra, 487 S.W.2d 493; Nelson v. Nelson, supra, 512 S.W.2d 455.

The judgment is affirmed.

All concur.